# United States Court of Appeals
## For the First Circuit

No. 09-2418

CARL STATCHEN,

Plaintiff, Appellant,

v.

JASON PALMER, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Gajarsa[*] and Thompson,

Circuit Judges.

Michael J. Sheehan for appellant.
Jeanne P. Herrick with whom Charles P. Bauer and Gallagher, Callahan & Gartrell, P.C. were on brief for appellees Jason M. Palmer, Dick A. Scott, and City of Concord.

October 15, 2010

---

[*]Of the Federal Circuit, sitting by designation.

**BOUDIN**, **Circuit Judge**.  In June 2007, Carl Statchen struggled with two police officers over their attempt to take him into protective custody for public intoxication; he also fought the subsequent efforts of several officers to transport him from the station house to jail.  Statchen later brought this civil rights action, 42 U.S.C. § 1983 (2006), alleging that the officers used excessive force in both episodes.  The district court granted summary judgment against him, and he now appeals.

We recount the facts in the light most favorable to Statchen as the party opposing summary judgment.  Dwan v. City of Boston, 329 F.3d 275, 277 (1st Cir. 2003).  On June 21, 2007, Statchen drove from his home in Connecticut to Concord Hospital in New Hampshire, where his daughter was scheduled to have surgery the next morning.  Statchen, a recovering alcoholic, was anxious about the surgery and bought a six-pack of beer to cope.

He drank five of the 16-ounce cans, slept in his car and drank the sixth in the morning before entering the hospital.  There he quarreled with his ex-wife, left to acquire more beer--he drank several more cans--and returned to the hospital only to be asked to leave.  Concord police officer Dick Scott responded to the hospital's report of a verbally abusive and intoxicated male and met Statchen at the hospital exit; concerned that Statchen might drive, Scott administered a breathalyzer test, which led him to confiscate the keys to Statchen's car.  Scott also asked about the

-2-

large bruise adorning Statchen's left eye; Statchen explained to the officer that he had been in a fight the day prior and bragged that "the other guy" looked worse.

Statchen then walked to a convenience store where he bought food and coffee, as he told Scott he would, but also beer; he quaffed four more cans behind the store. Concord police officer Jason Palmer responded to a call about Statchen, followed shortly by Scott. After an exchange--Scott had earlier warned Statchen to stop drinking--Scott announced that he was taking Statchen into protective custody, N.H. Rev. Stat. Ann. § 172-B:3(I)(c) (2002); the officer ordered Statchen to put his hands behind his back to be cuffed.

Although accounts now diverge, it is clear that Statchen resisted in some fashion. Statchen himself says that he assumed a posture akin to "a line backer position" to brace himself as the officers moved to pinion him. The officers grabbed his arms, and Statchen--5'10" tall and weighing approximately 250 pounds at the time--tumbled to the ground. A brief melee ensued, with the officers kneeing and hitting Statchen until finally he stopped struggling and verbally acquiesced.

During the ride to the police station, Statchen boasted that it took two officers to restrain him. When at the station Scott sought to cuff him again--to transport him to a jail located away from the station--Statchen again resisted; several officers

-3-

rushed him; and a fight ensued. Statchen was eventually subdued and transported to the jail, which admitted him only after a hospital check. He was later found to have fractured two ribs.

Statchen was afterwards charged in three criminal complaints, comprising two counts of resisting arrest or detention, N.H. Rev. Stat. Ann. § 642:2 (2007), and one count of simple assault, id. § 631:2-a(I)(a). On January 14, 2008, he was convicted upon a plea of nolo contendere on both counts of resisting arrest or detention; the simple assault complaint was "placed on file" (that is, prosecution was deferred) on condition of good behavior for six months.

Statchen then filed this section 1983 action in federal district court in New Hampshire against Palmer, Scott and the City of Concord. The complaint charged that Palmer and Scott had violated Statchen's fourth amendment rights by using excessive force to handcuff him at the convenience store and that Scott did so again at the police station; Statchen also asserted common law assault claims for the same conduct.

The district court granted summary judgment for the defendants, relying on affidavits from both officers and a deposition of Statchen. The court found that the suit was not barred by Heck v. Humphrey, 512 U.S. 477 (1994), but that the officers' conduct was reasonable and also protected by qualified

immunity.[1]  The court dismissed the state law claims on analogous state grounds, and--as Statchen did not address the state claims in his appellate brief--reliance on them at oral argument came too late.  Nieves-Vega v. Ortiz-Quiñones, 443 F.3d 134, 137 n.1 (1st Cir. 2006).

The qualified immunity defense accepted by the district court disposes of this appeal, and the legal framework for it is straightforward.  An arrest is a form of fourth amendment seizure and the use of force to effect it must be reasonable under all the circumstances, Graham v. Connor, 490 U.S. 386, 396 (1989); but under the doctrine of qualified immunity, police officers are themselves entitled to reasonable latitude in making judgments about how much force is necessary to overcome resistance. Qualified immunity is often resolved before trial, one of its aims being to avoid the burden of trial as well as liability itself. Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004).

While qualified immunity is often invoked in cases where legal principles were unclear at the time of the disputed conduct, it also protects reasonable assessments of fact, Maldonado v.

---

[1]A damages claim that would necessarily imply the invalidity of the claimant's prior criminal conviction, sentence or detention is not cognizable under section 1983 unless and until the plaintiff has first obtained a favorable termination of the conviction.  See Heck, 512 U.S. at 486-87; Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006).  In our case, the district court held that Statchen could succeed on his excessive force claims without implying that his convictions for resisting arrest were invalid.

<u>Fontanes</u>, 568 F.3d 263, 269 (1st Cir. 2009), even if matters might have been handled differently in the calm of retrospective appraisal, <u>Roy</u> v. <u>Inhabitants of Lewiston</u>, 42 F.3d 691, 695 (1st Cir. 1994). The aim of the doctrine in both cases is to avoid the chilling effect of second-guessing where the officers, acting in the heat of events, made a defensible (albeit imperfect) judgment. <u>See</u> <u>id.</u>

On summary judgment, the non-moving party (as we have noted) is entitled to have the court credit his version of events, but with qualifications: incredible assertions by that party need not be accepted, <u>Scott</u> v. <u>Harris</u>, 550 U.S. 372, 380 (2007), nor must conclusory allegations, <u>Martínez-Rodríguez</u> v. <u>Guevara</u>, 597 F.3d 414, 419 (1st Cir. 2010). And the evidence <u>from the moving party</u> as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment. <u>LaFrenier</u> v. <u>Kinirey</u>, 550 F.3d 166, 167 (1st Cir. 2008). It is only where a material issue of fact remains in genuine dispute that the case must be put to trial.

Here, Statchen's section 1983 complaint claimed that he "spoke with the officers, offered no resistance, and was jumped by the police near the convenience store for no apparent reason" and that he "made no visible attempt to resist." Yet Statchen's own deposition fails to dispute that he refused police orders to allow himself to be cuffed. Nor does Statchen claim that at the police

-6-

station he obeyed the instruction to allow the police to cuff him again.

Statchen's case comes down then to the proposition that although he resisted arrest in both incidents--and pled <u>nolo contendere</u> to those charges--the police officers struck him too hard or continued to strike him after he had stopped resisting. <u>Cf. Thore</u>, 466 F.3d at 180. The difficulty for Statchen is not that the police officers' affidavits offer no support for such a story; it is that his own deposition also fails to do so and there is no indication that he filed any affidavit at all.

On their side, the police officers' affidavits gave a largely consistent description of a melee in which two officers tried to seize a heavy and intoxicated man who was refusing to submit and who fell to the ground and continued to grab and struggle with the officers.[2] They admit to using considerable force, but only to the extent that Statchen refused to submit to handcuffs. The officers shouted at him to stop resisting throughout the encounter, and they ceased to use force when he finally agreed to stop.

As against this detailed account, Statchen's deposition gives a much hazier description, hardly surprising given his

_____

[2]The officers claim that Statchen grabbed Palmer's leg and may have tried to bite it, which Statchen disputes; but whether or not this occurred, his deposition makes perfectly clear that he did not obey their initial verbal commands and did not lie still once he had landed on the ground.

intoxication. And while he is vivid in describing knees and punches thrown at him in the struggle, nothing in his account suggests more force than necessary to muscle a large and uncooperative man into handcuffs--or, at least, it was reasonable to think such force necessary, given Statchen's intransigence, intoxication and description of his fight the day before.

At the police station, Statchen's own complaint indicated that Scott entered the cell with other officers only after Statchen did not comply with a verbal command to be handcuffed for transport. His deposition account of events at the station is even sketchier than his account of his arrest and in no way contradicts Scott's claim that the officers used only the force needed to handcuff him. And his resistance at the station came after a car ride in which he crowed about fighting the officers again.

Statchen suffered two fractured ribs over the course of the day--no trivial matter but also not surprising when a heavy and drunken man is fighting with police officers who had done nothing to provoke him. The district court had no basis for sending the case to a jury because Statchen's own deposition provided no evidence to indicate that the force exerted (however considerable) was unnecessary, or that a reasonable police officer would have thought otherwise.

<u>Affirmed</u>.