# United States Court of Appeals
## For the First Circuit

No. 12-1109

CAMILA M. CAMPOS, Individually, and as
Administratrix of the Estate of Andre Martins,

Plaintiff, Appellee,

v.

CHRISTOPHER VAN NESS, Yarmouth Police Officer;
TOWN OF YARMOUTH, MA,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Howard, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Leonard H. Kesten, with whom Deidre Brennan Regan and Brody,
Hardoon, Perkins & Kesten, LLP were on brief, for appellants.
Paul F. Leavis, with whom Deborah M. Santello and Leavis &
Rest, P.C. were on brief, for appellee.

April 1, 2013

---

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**STAHL, Circuit Judge**.  After a vehicle pursuit during the early morning hours of July 27, 2008, Officer Christopher Van Ness of the Yarmouth, Massachusetts Police Department shot and killed Andre Martins.  Plaintiff-appellee Camila Campos, individually and as administratrix of Martins's estate, brought this civil rights action against defendants-appellants Van Ness and the Town of Yarmouth under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, § 11I.  Defendants-appellants filed a motion for summary judgment, arguing that Campos had not established that Van Ness's use of force violated Martins's constitutional rights and that, in any event, Van Ness was entitled to qualified immunity.  The district court denied the motion without opinion.

We have jurisdiction to entertain an interlocutory appeal from a denial of summary judgment on qualified immunity grounds "only if the material facts are taken as undisputed and the issue on appeal is one of law."  Mlodzinski v. Lewis, 648 F.3d 24, 27 (1st Cir. 2011).  Thus, when the parties tell two different stories, as is the case here, we typically must view the facts and draw all reasonable inferences in the non-movant's favor.  Id. at 28.  In Scott v. Harris, 550 U.S. 372 (2007), however, the Supreme Court carved out an exception to that rule, concluding that where the non-movant's account "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion

-2-

for summary judgment," id. at 380; see also Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010) (noting that a court need not accept "incredible assertions" by the non-moving party). Defendants-appellants attempt to fit this case within the Scott framework, claiming that Campos's description of the shooting is "so discredited by the record that no reasonable jury could believe her" and urging us to decide the legal question of immunity based largely on Van Ness's account.

The district court here unfortunately exercised its right not to explain the basis for its denial of summary judgment. See Camilo-Robles v. Hoyos, 151 F.3d 1, 8 (1st Cir. 1998). We therefore "must perform the equivalent of an archeological dig and endeavor to reconstruct the probable basis for the district court's decision." Id. As we explain below, that process leads us to conclude that this case is distinguishable from Scott and to assume that the district court denied the motion on the ground that there remains a genuine dispute of material fact as to the exact circumstances of the shooting, which must be resolved by a jury.

On the night in question, at around 1:00 a.m., Martins was driving through Yarmouth in a black Lincoln with Campos in the passenger seat. Van Ness, who claims to have observed the Lincoln traveling "at a high rate of speed," began following the car in his police cruiser. Campos maintains that Martins did not begin speeding until he noticed the cruiser behind him and, even then,

was driving "fast but not really fast."  With Van Ness in pursuit, Martins ended up on Baxter Avenue and pulled onto the front lawn of a house, in an attempt to make a u-turn and avoid a second officer, whose cruiser was blocking both lanes of Baxter Avenue ahead of Martins.  Van Ness followed Martins onto the Baxter Avenue lawn and made contact with the left rear quarter panel of the Lincoln with his cruiser.  The Lincoln slid across the grass and came to a stop. According to an accident reconstruction report that Campos commissioned,[1] the two vehicles wound up almost parallel, facing each other, on the lawn.  The Lincoln's front end was pointed toward Baxter Avenue and slightly toward the driver's side door of the cruiser, and the cars' A-pillars[2] were about 8.8 feet apart. Van Ness got out of his cruiser and aimed his gun at the Lincoln.

What happened next is hotly contested and was witnessed only by Martins, Campos, and Van Ness.  Campos claims that Van Ness positioned himself beside the Lincoln and shot Martins through the driver's side window.  She maintains that Martins was trying to back up the car when Van Ness fired, but the car was not actually moving.[3]  According to Campos, after Van Ness fired, the Lincoln

[1]  The report was prepared using measurements of the scene taken by professional surveyors, observations of gouges in the lawn, and post-incident photographs and video footage.

[2]  The A-pillars are the frontmost pillars on a car; they separate the windshield from the front doors.

[3]  We do not agree with defendants-appellants that Campos's initial statement to the police, when read in its entirety,

-4-

began traveling forward but was not "anywhere close" to Van Ness and did not strike him.

Van Ness, on the other hand, says he immediately positioned himself behind the open driver's side door of his cruiser, pointed his gun at Martins, and ordered Martins to show his hands. Within seconds, Martins began accelerating toward him. Out of what Van Ness describes as a belief that his life was in danger, he fired at the Lincoln as it passed by him. Van Ness also claimed, both in a statement prepared after the accident and during his deposition, that the Lincoln's driver's side mirror struck the left side of his body as the car moved past him, though he has not mentioned that fact on appeal.

A ballistics report, which Campos also commissioned, states that "Van Ness was positioned to the side of the open driver's window of the Martins vehicle" when he fired his first shot. The bullet struck Martins on the left side of his back and exited through his chest. Van Ness fired two more shots through the Lincoln's rear window.

The accident reconstruction report does not specify when those shots occurred or where Van Ness was positioned in relation to the Lincoln when he fired them, but it does chart the Lincoln's movement and likely speed from when it first stopped on the lawn

_____

suggests that the Lincoln was actively backing up when Van Ness fired, and we therefore do not find that it contradicts her deposition testimony on this point.

-5-

until it reached its final position on Baxter Avenue after the shooting. According to the report, from its stopped position facing Baxter Avenue and the cruiser, the Lincoln drove past the cruiser, with the Lincoln's driver's side door passing the cruiser's (open) driver's side door, at a speed of no more than seven to thirteen miles per hour.[4] The expert found no damage to the cruiser door, and the report therefore concludes that, because Van Ness claimed to have been standing behind that door when the Lincoln passed by him, his testimony that the Lincoln struck his left side was "inconsistent with the collected physical evidence."

The Lincoln ended up on Baxter Avenue, where it came to a stop. Campos exited the car screaming. Officers at the scene administered first aid to Martins, but he was pronounced dead at Cape Cod Hospital at 1:50 a.m. The cause of death was a gunshot wound to Martins's torso, which perforated his heart and lung.

While defendants-appellants dispute several aspects of Campos's story, they are primarily asking us to set aside two claims she has made that are relevant to the issue of qualified immunity: (1) that Martins's car was not moving when Van Ness fired

---

[4] As noted above, the accident reconstruction report states that the cars began in a stopped position on the lawn, with their A-pillars 8.8 feet apart. When the front bumper of the Lincoln passed the leading edge of the open cruiser door, the distance between the A-pillars was 6.9 feet, and the Lincoln was traveling no more than 7 miles per hour. When the driver's side mirror of the Lincoln passed the leading edge of the open cruiser door, the distance between the cars' A-pillars was 4.6 feet, and the Lincoln's speed was no more than 13 miles per hour.

the fatal shot; and (2) that the car began moving only after that point and did not move near Van Ness.  Her testimony on those two points, in defendants-appellants' view, contradicts the opinions of her own accident reconstruction and ballistics experts.

But the accident reconstruction report only charts the Lincoln's speed and path of travel as it moved from a stopped position on the lawn, past the police cruiser, and onto Baxter Avenue; it does not establish when, within that movement sequence, Van Ness fired.  The reconstruction expert <u>was</u> apparently asked to determine whether the Lincoln could have hit Van Ness, as Van Ness claimed, and for that purpose, the expert explicitly used Van Ness's testimony that he was standing behind the cruiser's open driver's side door when the Lincoln traveled past him.  Nowhere, however, does the report mention Campos's account or attempt to reconcile her story with Van Ness's to determine where Van Ness was positioned when he took the fatal shot, or when within the Lincoln's movement sequence he took it.[5]

At first glance, the ballistics report seems to pose more of a problem for Campos, since it states that "at the time that Officer Van Ness fired his service pistol, Mr. Martin's [sic]

_____

[5]   The report does appear to contradict Campos's deposition claim that the cruiser was positioned to "the side rear" of the Lincoln when the cars came to a stop on the lawn, but that does not necessarily undermine the rest of her testimony, since the operative question is where Van Ness was standing, and whether the Lincoln was moving toward him, when he fired the fatal shot.

vehicle was traveling past the position of Officer Van Ness at a rate of travel between 7 and 13 miles per hour." But that conclusion is, according to the report itself, "[b]ased upon the accident reconstruction" report (which accepted Van Ness's claim that he was standing behind the cruiser door when the Lincoln drove past him) and "Officer Van Ness's direct testimony that the vehicle was traveling past him at the time he fired his service pistol." The ballistics expert thus seems to have assumed the truth of Van Ness's account and, under that set of facts, analyzed whether Van Ness's use of force was reasonable (concluding that it was not). The report does not address Campos's version of events, nor does it indicate that Van Ness's telling is the only one corroborated by the ballistics findings.[6]

We are therefore a long way from the videotape in <u>Scott</u> that captured the car chase in question and "quite clearly contradict[ed]" the plaintiff's account. 550 U.S. at 378.

Campos's story does beg two questions, neither of which we need answer today, because defendants-appellants have not properly put them before us. The first is how the bullet entered

---

[6]   That the ballistics and accident reconstruction experts both list Campos's interview with the Yarmouth Police Department as one of the many pieces of information they relied on in forming their opinions does not change our analysis. Viewing the reports in the light most favorable to Campos, <u>see</u> <u>Mlodzinski</u>, 648 F.3d at 28, it is reasonable to infer from the absence of any discussion of her account that the experts were not asked to compare it with Van Ness's and determine which one was supported by the evidence.

-8-

Martins's back if Van Ness was standing next to the driver's side window of the Lincoln and the car was not moving when Van Ness took the fatal shot. Defendants-appellants did not raise this issue below or on appeal and thus have not satisfied their "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). That failure, in turn, deprived Campos of the opportunity to demonstrate, "through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citing Celotex Corp., 477 U.S. at 322-24).[7]

The second question is how two bullets ended up going through the rear window of the car, given Campos's deposition testimony that Van Ness fired all "[f]our or five shots" before the Lincoln began moving. Once again, however, the burden was on defendants-appellants to make this point before the district court, and their failure to do so left Campos with no opportunity to

_____

[7] Though we need not decide the issue, we do note that Campos said in her statement to the police that Martins was trying to back up the car when Van Ness fired the fatal bullet. Martins might therefore have been turned away from the driver's side window when Van Ness shot, which could explain how the bullet entered the left side of his back under Campos's version of the events.

respond. See Celotex Corp., 477 U.S. at 322-24. Defendants-appellants' belated invocation of the issue for the first time at oral argument was insufficient, particularly given that their brief describes Campos as having testified that Martins's car was stuck only when Van Ness fired the _fatal_ shot and "began moving . . . after that _first_ shot" (emphasis added). See Constructora Andrade Gutiérrez, S.A. v. Am. Int'l Ins. Co. of P.R., 467 F.3d 38, 47 (1st Cir. 2006) ("We generally do not address arguments made for the first time during oral argument, especially when the arguments are contrary to the arguments made in the briefs.").

In short, defendants-appellants have not convinced us that Campos's story is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott, 550 U.S. at 380. Nor have they attempted, in the alternative, to accept all of Campos's facts and inferences as true and "argue that even on [Campos's] best case, they are entitled to immunity." Mlodzinski, 648 F.3d at 28.[8] We therefore dismiss the appeal for lack of jurisdiction. See id.

---

[8] Defendants-appellants have suggested that "[w]hether the [Lincoln] was moving before or shortly after the shot was fired is immaterial for purposes of qualified immunity." They have not, however, elaborated on that statement or explained why this case (on the facts as Campos has presented them) is analogous to the Eleventh Circuit and Supreme Court cases they cite. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).