# United States Court of Appeals
## For the First Circuit

No. 09-1222

JONATHAN KLAUCKE,

Plaintiff, Appellant,

v.

BRIAN C. DALY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Bruce D. Colegrove, on brief for appellant.
Richard W. Jensen and Morrison, Mahoney, LLP, on brief for
appellee.

February 9, 2010

**TORRUELLA**, **Circuit Judge**.  In this appeal, plaintiff-appellant Jonathan Klaucke challenges the district court's grant of summary judgment in favor of defendant-appellee Brian C. Daly, a police officer in Amherst, Massachusetts, on claims alleging violations of Klaucke's Fourth Amendment rights brought pursuant to 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act.  We conclude on the undisputed facts that Officer Daly had ample reasonable suspicion to believe that Klaucke was a minor in possession of alcohol in violation of state law when he detained Klaucke, demanded identification, and briefly retained his driver's license in order to confirm its validity and check for outstanding warrants.  We affirm.

## I.  Background

### A.  The Facts

The facts are straightforward.  On May 5, 2007, Klaucke was a 21-year-old senior at the University of Massachusetts at Amherst who, by all accounts, looked younger than his years.  At approximately 9:00 p.m. on that Saturday night, Klaucke was walking with a group of four friends along Meadow Street in Amherst.  It was the Mexican holiday of Cinco de Mayo, and Klaucke and his friends were on their way to a party in the area.  Three of Klaucke's companions were visibly carrying alcohol as they walked, including two twelve packs of Corona beer and a large 22-ounce bottle of Smuttynose beer.

Klaucke wore a backpack and carried a brown paper "Whole Foods" grocery bag. The contents of the bag were not visible, though as it turned out Klaucke was carrying six loose cans of beer. Everyone walking with Klaucke was also over 21 years old, the minimum age required in Massachusetts to legally possess alcohol. See Mass. Gen. Laws ch. 138, sec. 34C (providing that "police officer may arrest without warrant" any person "under twenty-one years of age and not accompanied by a parent or legal guardian . . . [who] knowingly possesses, transports or carries on his person . . . any alcohol or alcoholic beverages").

Around the same time, Officer Daly was patrolling the Meadow Street area on motorcycle. He was accompanied by a colleague, Officer Todd Lang. The area was known for a high incidence of underage drinking and student crime -- including large scale disturbances, property damage, and both physical and sexual assaults -- much of it alcohol-fuelled. The first two weeks of May typically brought an increase in these incidents and, in an attempt to head it off, the Amherst Police Department had been conducting seminars and distributing leaflets in the area to notify residents and students that officers would be patrolling the area and requesting proof of age from individuals who were carrying alcohol and appeared to be under the legal age. Seeing Klaucke's friends with beers in hand, Officer Daly did just that. He approached the group and asked each member if he or she was over 21 years old.

When they all answered that they were, Officer Daly asked them to produce identification to confirm their age. The other members of Klaucke's group complied immediately.

Klaucke alone refused to hand over his ID. He told the officer that he was 21 years old and had done nothing wrong. He asserted his Fourth Amendment rights, and said that he had previously spoken to a lawyer and believed that, under the circumstances, he was not required to produce identification. Officer Daly replied that he suspected Klaucke had alcohol in his bag and was under the legal age, and again demanded identification. Klaucke continued to refuse, and questioned the basis for the officer's belief that he was carrying alcohol. This cavil back and forth continued, for no more than a few minutes, until Officer Daly stated that if Klaucke continued to refuse to produce identification, Daly would assume Klaucke was underage and in possession of alcohol, arrest him, and figure out his age during the booking process. Klaucke promptly produced his driver's license, which verified that he was 21.

Officer Daly did not return the identification to Klaucke immediately, as he had to Klaucke's more cooperative companions. Rather, he kept the license while he relayed Klaucke's information to his dispatcher to confirm the validity of the license and perform a check for outstanding arrest warrants. Officer Daly explains that, at the time, he suspected Klaucke may have had a

warrant out for his arrest given his adamant -- and, in Daly's view, inexplicable -- refusal to produce identification that would have verified that he was 21.

After confirming that the license was real and that Klaucke had no outstanding warrants, Officer Daly returned the identification and Klaucke and his friends went on their way. Between two to eight minutes elapsed between the time Officer Daly took Klaucke's license and the time he returned it. The entire incident lasted no more than eighteen minutes.

## B. Procedural History

On August 23, 2007, Klaucke filed suit against Officer Daly in federal court, bringing claims under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I.[1] The gravamen of his complaint under both state and federal law was that Officer Daly had violated his Fourth Amendment right to be free from unreasonable search and detention when the officer demanded identification, threatened him with arrest, briefly retained his license, and conducted the warrant search. Klaucke alleged that Daly was without a reasonable basis to do any of these things.

---

[1] Klaucke pled his state cause of action under Mass. Gen. Laws ch. ch. 12, § 11H-1. Because Section 11H governs civil rights actions brought by the Attorney General, and because Section 11H-1 does not exist, we assume, like the district court, that Klaucke meant to bring a claim pursuant to Section I, which creates a private cause of action for individuals alleging a deprivation of state or federal constitutional freedoms.

Officer Daly moved for summary judgment and, after a hearing, the district court ruled from the bench that the officer's actions were supported by a reasonable suspicion that Klaucke was a minor in possession of alcohol and that, as a result, no Fourth Amendment violation had occurred. The district court also held, in the alternative, that even assuming for argument's sake there had been some violation of Klaucke's constitutional rights, Officer Daly was entitled to qualified immunity for his conduct as those rights were not clearly established at the time of the incident. The court granted Officer Daly's motion for summary judgment.

Shortly thereafter, on January 13, 2009, the district court issued a brief written opinion to the same effect. See Klaucke v. Daly, 592 F. Supp. 2d 222 (D. Mass. 2009). In it, the court articulated the facts supporting its conclusion that Officer Daly had reasonable suspicion to believe that Klaucke was a minor in possession of alcohol at the time Daly demanded his identification. These facts were "the nature of the area in which [Klaucke's group was] walking, . . . the time of day and particular holiday" and, "[o]f more importance[,] . . . the fact that the individuals, especially Plaintiff, were of young appearance and three of the five were openly carrying alcoholic beverages." Id. at 224. Final judgment was entered on the same day. Klaucke now appeals.

## II. **Discussion**

### A. **Standard of Review**

We review a district court's grant of summary judgment de novo. Insituform Techs., Inc. v. Am. Home Assurance Co., 566 F.3d 274, 276 (1st Cir. 2009). "We will affirm entry of summary judgment if the record -- viewed in the light most favorable to the nonmoving party, including all reasonable inferences drawn in favor of the nonmoving party -- discloses no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Kunelius v. Town of Stow, 588 F.3d 1, 8-9 (1st Cir. 2009). "We may affirm summary judgment on any ground manifest in the record." Emhart Indus. Inc. v. Century Indem. Co., 559 F.3d 57, 65 (1st Cir. 2009).

### B. **The Investigative Stop**

Klaucke does not dispute that Officer Daly was permitted under the Fourth Amendment to approach him and his companions, inquire as to their age, and request that they voluntarily produce identification. United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997) ("Police may approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment. Such police engagements need not find a basis in any articulable suspicion." (citations omitted)); see, e.g., Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177, 185 (2004) ("Asking questions is an essential part of police investigations.

-7-

In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."). Instead, he asserts that Officer Daly first crossed the constitutional line when he "seized" Klaucke and "demanded" that he produce identification. Interactions such as this, which involve more intrusive, investigative stops of an individual, fall within the ambit of the familiar Terry line of cases. See Terry v. Ohio, 392 U.S. 1 (1968).

"When conducting a Terry stop, a police officer may briefly detain an individual for questioning if the officer has 'reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.''" Schubert v. City of Springfield, 589 F.3d 496, 501 (1st Cir. 2009) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "In determining whether a Terry stop is justified, our inquiry involves two steps, first, 'whether the officer's action was justified at its inception,' and second, 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" Id. (quoting Terry, 392 U.S. at 20).

At the first step, "reasonable suspicion" requires the officer to have "'a particularized and objective basis' for suspecting the person stopped of criminal activity." United States v. Wright, 582 F.3d 199, 205 (1st Cir. 2009) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). This basis must be

"'grounded in specific and articulable facts,'" and turns "not on what the officer himself believed but, rather, on what a reasonable officer in his position would have thought." United States v. Espinoza, 490 F.3d 41, 47 (1st Cir. 2007) (quoting United States v. Hensley, 469 U.S. 221, 229 (1985)).[2]

At the next step, we look to whether the officer's investigative measures were reasonably calculated to uncover evidence of wrongdoing related to circumstances giving rise to the officer's initial suspicions. See Terry, 392 U.S. at 20. There is no fixed guide to what police investigative measures are within the scope of a Terry stop; in all events, the touchstone is the reasonableness of the measures undertaken to quell or confirm the officer's suspicions. See, e.g., Hiibel, 542 U.S. at 188-89.

In this case, we agree with the district court that the circumstances confronted by Officer Daly were more than sufficient to support a reasonable suspicion that Klaucke was a minor in possession of alcohol in violation of state law. Klaucke's age and

_____

[2] Klaucke argues that summary judgment is inappropriate due to the existence of factual disputes concerning why Officer Daly suspected Klaucke had alcoholic beverages in his bag. For example, Officer Daly explained in his deposition that he suspected Klaucke had alcohol only after seeing Klaucke attempt to conceal the bag, at which point Daly claims he saw a wine bottle protruding from the top of the bag. Klaucke disputes these facts, but they are not material. Rather, under Terry, we view the circumstances attending the investigative stop through an objective lens, and therefore have no need to resolve ancillary disputes rooted in allegations regarding the officer's actual, subjective beliefs, even if those beliefs were mistaken. United States v. Ruidíaz, 529 F.3d 25, 29 (1st Cir. 2008) (reasonable suspicion "is not dependent on an individual officer's subjective motives").

-9-

appearance more than justified the reasonable suspicion that he was under 21 years old.  The district court found that Klaucke "had an unusually youthful appearance even for his age," a determination well within its ken and supported by photographs of Klaucke appearing in the record.

Further, the circumstances confronted by Officer Daly at the time of the stop amply justified the reasonable suspicion that Klaucke was in possession of alcohol.  Officer Daly was on patrol in an area well-known for undergraduate drinking.  It was a Saturday night and, moreover, a holiday and time of year particularly associated with student partying.  Cf. United States v. Ortiz, 422 U.S. 891, 897 (1975) (police officers may permissibly "draw reasonable inferences from [the] facts in light of their knowledge of the area and their prior experience").  While these considerations may have been insufficient, without more, to arouse suspicion in the eyes of a reasonable officer, taken together with the undisputed fact that Klaucke was walking in a group in which his companions were openly carrying alcohol, we find that a reasonable officer standing in Officer Daly's shoes could have suspected that the brown grocery bag Klaucke carried concealed alcoholic beverages.

Thus, we turn to whether the investigative measures undertaken by Officer Daly were reasonably related in scope to the circumstances that first aroused his suspicion.  Officer Daly's

demand for identification, plainly, was reasonably related to his suspicion that Klaucke was underage. Under the circumstances of this case, the officer was not required to take Klaucke at his word that he was 21. Further, given Klaucke's initial refusal to produce identification, it was not unreasonable for Officer Daly to quickly verify the license to confirm he had not been handed a fake. It is well-known that college students often have doctored IDs which list them as older than they are, just so they can drink.[3]

As for the warrant search, most circuits have held that an officer does not impermissibly expand the scope of a Terry stop by performing a background and warrant check, even where that search is unrelated to the circumstances that initially drew the officer's attention. See, e.g., United States v. Kirksey, 485 F.3d 955, 957 (7th Cir. 2007) (explaining that when an individual "remains under suspicion for committing a crime, the officer can

---

[3] Klaucke suggests that he was "coerced" into producing his identification by an unlawful threat of arrest. Assuming for argument's sake that more than reasonable suspicion was required to threaten arrest, we conclude that the totality of information known to Officer Daly at the time, including Klaucke's behavior in refusing to produce his proof of age, was sufficient to allow Officer Daly's reasonable suspicion to ripen into probable cause to believe that Klaucke had violated Mass. Gen. Laws ch. 138, sec. 34C. See Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004)("The test for probable cause [to support an arrest] does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable."). On these facts, the choice Officer Daly presented to Klaucke was a lawful and common sense response to an impasse of Klaucke's own creation.

take a reasonable amount of time to check for outstanding warrants or criminal history, even if the initial justification for the stop had nothing to do with criminal history." (citing United States v. Villagrana-Flores, 467 F.3d 1269, 1275-77 (10th Cir. 2006)); accord United States v. Cavitt, 550 F.3d 430, 437 (5th Cir. 2008) (traffic stop); United States v. Long, 532 F.3d 791, 795 (8th Cir. 2008); United States v. Rusher, 966 F.2d 868, 876-77 (4th Cir. 1992).

We need not address whether warrant checks are always permissible in the normal course of a Terry stop. Under the circumstances here, Klaucke's refusal to produce a license that would have alleviated the officer's stated concerns reasonably roused a suspicion that his non-cooperation was driven by other considerations, like an outstanding warrant for his arrest or other criminal history, such as a prior arrest for underage drinking. Cf. United States v. Sowers, 136 F.3d 24, 27 (1st Cir. 1998) (police officer's "shift in focus" based on "unfolding events" in course of Terry stop was "neither unusual nor impermissible"). It took less than eight minutes to perform both the license validity and warrant check. We hold that these brief actions were within the scope of conduct permissible under Terry.

Accordingly, on the undisputed facts, Klaucke has failed to show that Officer Daly violated any of his constitutional rights, and we therefore need not address independently the issue

-12-

of qualified immunity.  See, e.g., Holder v. Town of Sandown, 585 F.3d 500, 508 (1st Cir. 2009).

**<u>Affirmed</u>**.