Tormu E. PRALL

v.

CITY OF BOSTON, et al.

Civil Action No. 10–10058–RWZ.

United States District Court,
D. Massachusetts.

Nov. 18, 2013.

Tormu E. Prall, Trenton, NJ, pro se.

Alix M. O'Connell, Lisa Skehill Maki, City of Boston Law Department, Boston, MA, for City of Boston, et al.

### ORDER

ZOBEL, District Judge.

Plaintiff's Motion for Leave to Allow Supplemental Briefing on the Privilege Against Self–Incrimination Claim (Docket # 148) is allowed.

Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge (Docket # 149) are overruled.

Upon consideration of the Report (Docket # 146) and plaintiff's objections thereto the court accepts it and adopts the Magistrate Judge's Recommendations. Accordingly,

It is ORDERED:

1. Plaintiff's Motion For Summary Judgment (Docket # 121) is denied.

2. The Motion for Summary Judgment of the City of Boston (Docket # 128) is allowed.

3. The Motion for Summary Judgment of the individual defendants Jeffrey Lynch and Jeffrey Cahill (Docket # 127) is allowed.

4. Judgment may be entered for the City of Boston on Count 1 and for the individual defendants on Count 2 of the Amended Complaint.

5. Judgment may also be entered dismissing the claims against John Does 1–99 a/k/a Unknown Named Boston Police Officers and John Moe a/k/a Magistrate Judge.

### REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT (# 121), DEFENDANT OFFICER JEFFREY LYNCH AND DEFENDANT OFFICER JEFFREY CAHILL'S MOTION FOR SUMMARY JUDGMENT (# 127), and DEFENDANT, CITY OF BOSTON'S MOTION FOR SUMMARY JUDGMENT (# 128)

COLLINGS, United States Magistrate Judge.

### I. Introduction

*Pro se* plaintiff Tormu E. Prall ("Prall") filed a nine-count complaint against defendants City of Boston ("the City"), John Does 1099, a/k/a, unknown named Boston police officers, John Moe, a/k/a, Magistrate Judge and Jane Doe, a/k/a, Commonwealth Judge on January 4, 2010. (# 1) Seven of those counts were dismissed in early 2011. *See Prall v. City of Boston*, 2011 WL 1344500 (D.Mass., Jan. 18, 2011), *Report and Recommendation adopted*, 2011 WL 1367041 (D.Mass., Mar. 4, 2011). On April 26, 2011, Prall's motion for leave to amend complaint (# 48) was allowed and Jeffrey Lynch ("Lynch") and Jeffrey Cahill ("Cahill"), both Boston police officers, were added as parties-defendant.[1] There are two claims at issue in the motions now before the Court: Count I against the City for municipal liability under 42 U.S.C. § 1983 and Count II against Officers Cahill and Lynch for violation of the Fourth Amendment for their roles in arresting Prall on May 17, 2008.(# 55)

On September 4, 2012, the plaintiff filed a motion for summary judgment (# 121) together with a memorandum of law (# 122) and a declaration. (# 123) On October 15, 2012, defendants Cahill and Lynch filed a motion for summary judgment (# 127), a memorandum of law (# 130), and a statement of facts with exhibits. (# 131) On even date, the City filed a motion for summary judgment (# 128), again with a memorandum of law (# 132) as well as a statement of facts with exhibits. (# 133) On October 25, 2012, Prall filed an opposition to both the City's and the individual defendants' disposition motions together with a declaration. (# 135) On November 15, 2012, the City, Cahill and Lynch filed an opposition to the plaintiff's summary judgment motion and a motion to strike [2] (# 136), a statement of disputed facts with supporting documents (# 137) and a Rule 56.1 statement of material facts with supporting documents (# 138). On December 3, 2012, Prall filed a reply to the defendants' opposition to his motion for summary judgment and to strike his declaration (# 140).

At this juncture the summary judgment record is complete, and the dispositive motions stand ready for decision.

### II. Factual Background

For present purposes, the relevant facts may be summarized as follows: Boston police dispatch received a call around 4:00 a.m. on May 17, 2008 that two black males were holding a white female against her will in downtown Boston. (# 123 ¶ 15;

---

1. Jane Doe, a/k/a, Commonwealth Judge is no longer named as a defendant in the amended complaint.

2. On June 28, 2013, the motion to strike (# 136) was denied with the caveat that in ruling on the motions for summary judgment,

the Court shall only consider facts in the declaration of the plaintiff which comport with Rule 56(c)(4), Fed.R.Civ.P., and which facts are supported as required by Rule 56(c)(1). (# 145).

#131 ¶ 7) Officers Cahill and Lynch responded to the location described and saw two black men walking with a white woman matching the description from the 9–1–1 call and approached the group. (# 123 ¶¶ 14–15; # 131 ¶¶ 8–9) Upon inquiry, the woman confirmed that she was not held against her will. (# 123 ¶ 16; # 131 ¶ 9)

Officers Cahill and Lynch asked each person for his or her name. (# 123 ¶ 16; # 131 ¶ 11) The other two members of the group provided their names, which were checked by the officers for any outstanding warrants in the NOVA system, and returned clean.[3] (# 123 ¶ 16; # 131 ¶ 11) Prall, however, provided the name "Denzil Willington" (sometimes spelled "Denzel"). (# 123 ¶ 16; # 131 ¶¶ 11–12) The officers could not locate any NOVA record for "Denzil Willington" and so asked Prall for his date of birth. (# 123 ¶ 16; # 131 ¶ 15) The plaintiff provided two different dates: January 1, 1973 and May 1, 1973.[4] (# 131 ¶ 15) Officers Cahill and Lynch asked Prall for his social security number and he provided the number "XXX–XX–XXXX".[5] (# 131 ¶ 17) The plaintiff further told the officers he was born in Boston, but could not recall where, and that he could not recall where he attended school.[6] (# 131 ¶ 19) Cahill and Lynch, noticing he was holding a red cup of liquid that smelled like alcohol—a fact that the plaintiff categorically disputes—placed Prall under arrest for public drinking. (# 123 ¶¶ 6(f) and (g), 21, 24; # 131 ¶ 20) Prall, although still refusing to provide his identification, was ultimately booked and fingerprinted after being ordered to do so by the state court judge as a condition of his release. (# 123 ¶ 31; # 131 ¶ 22) Following his release, it was discovered that Prall had an outstanding warrant in New Jersey.[7] (# 131 ¶ 22)

The plaintiff's civil claims against both the City and officers Cahill and Lynch in their individual capacity are for violation of 42 'U.S.C. § 1983. (# 55 ¶ 1) In their entirety, the claims as alleged in the amended complaint read:

### COUNT I

Plaintiffs injuries occurred as a direct and immediate consequence of the unconstitutional custom of the Boston Police Department and the deprivations of plaintiff's rights were affirmatively linked to the City of Boston's Mayor and Police Chief having a policy of inadequate training, supervision and discipline of Boston police officers.

### COUNT II

Defendants Lynch and Cahill violated the 4th Amendment rights by facilitating, participating in, condoning and executing plaintiffs false arrest.

Amended complaint # 55.

The plaintiff contends that the public drinking charge was fabricated to obtain his true identity. (# 122 at 2–3) He argues that officers Cahill and Lynch lacked reasonable suspicion and probable cause, and

---

3. Prall does not address the NOVA search results for the other individuals with him in his papers.

4. Prall does not address the differing dates in his declaration (# 123), but acknowledges the January 1, 1973 date in his statement of facts in his memorandum. (# 122 at 2 ¶ 36).

5. Prall does not address the social security number in his declaration (# 123), but ac-

knowledges the social security number 167–77–7777 in his statement of facts in his memorandum. (# 122 at 2 ¶ 36).

6. Prall does not address his answer to either question except to note that police did ask him where he went to school. (# 123 ¶ 4(d)).

7. Prall does not address his outstanding warrant in New Jersey. (# 123).

therefore arrested him in violation of the Fourth Amendment. (# 122 at 2–3) This violation, according to the plaintiff, resulted from the City's alleged failure properly to train its law enforcement officers on constitutional rights, and the City's purported knowing ignorance of the deficiency of its policy. (# 122 at 9–17)

### III. Legal Framework

#### A. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico,* 394 F.3d 40, 42 (1st Cir.2005) (internal quotation marks and citation omitted). When considering a motion for summary judgment, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir.2003) (citations omitted); *Borges ex rel. S.M.B.W. v. Serrano–Isern,* 605 F.3d 1, 5 (1st Cir. 2010).

> Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party must show that a genuine issue of material fact exists. This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg,* 680 F.3d 61, 65 (1st Cir.2012) (internal citations and quotation marks omitted); *Fontánez–Núnez v. Janssen Ortho LLC,* 447 F.3d 50, 54–55 (1st Cir.2006).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir.2006); *Guay v. Burack,* 677 F.3d 10, 13 (1st Cir.2012). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (further internal quotation marks omitted).

#### B. Title 42 U.S.C. § 1983

██ In pertinent part, 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an ac-

tion at law, suit in equity, or other proper proceeding for redress.

Both individuals and government entities may be liable for violating § 1983. *Filarsky v. Delia*, — U.S. —, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012), *reh'g denied*, — U.S. —, 132 S.Ct. 2764, 183 L.Ed.2d 631 (2012) ("Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law. Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." (citation omitted)). Individual police officers can be liable only if the individual officer personally participated in the alleged violation. *Cepero–Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir.2005) ("only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable"). "Under § 1983, municipalities can be liable for constitutional violations only if the violation occurs pursuant to an official policy or custom." *Welch v. Ciampa*, 542 F.3d 927, 941 (1st 2008); *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir.2013); *Kennedy v. Town of Billerica*, 617 F.3d 520, 531–32 (1st Cir.2010) (municipal liability may be imposed "only for underlying, identifiable constitutional violations attributable to official municipal policy; the municipality's failure to train or supervise its police officers only becomes a basis for liability when action pursuant to official municipal policy of some nature caused a constitutional tort." (internal citation and quotation marks omitted)). In order to succeed in a § 1983 action against a municipality, plaintiffs

> must prove that 'action pursuant to official municipal policy' caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the

acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Connick v. Thompson*, — U.S. —, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal citations omitted).

Because the plaintiff is proceeding *pro se*, the Court construes his claims liberally. *See Watson v. Trans Union LLC*, 223 Fed.Appx. 5, 6 (1st Cir.2007). First, Prall alleges that officers Cahill and Lynch, in their individual capacities, improperly arrested him for failing to provide his name in violation of the Fourth Amendment. (# 122 at 2–7) Secondly, the plaintiff contends that the City has a constitutionally deficient custom or policy that resulted in his injury. (# 123 at 9–17)

### IV. Discussion

#### A. Prall's Motion for Summary Judgment

Prall's dispositive motion may be narrowed into two salient issues at the heart of his § 1983 claims: (1) whether officers Cahill and Lynch arrested the plaintiff for failure to provide satisfactory identification and (2) whether the City was negligent in training its police force on the appropriate course of action to be taken when encountering individuals without identification.

There are too many factual disputes to grant summary judgment in favor of Prall. For example, it is disputed which officers were present at the plaintiff's arrest and what they said, as well as whether there is evidence of a custom or policy within the Boston Police Department. (# 137 at 2) Most significantly, officers Cahill and Lynch insist they arrested Prall for drinking in public, a fact the plaintiff denies. (# 123 at 17–18)[8] In short, the circum-

---

8. Moreover, Prall relies on statements taken subject to objections (# 137 at 2) and conclu-

sions unsupported in the record, e.g., referencing a document stating Prall had no de-

stances surrounding Prall's arrest are contested: was the plaintiff arrested for drinking in public or for failing to provide his name? Did officers Cahill and Lynch have probable cause to arrest, or did they not? Did the City have a policy of condoning arrests for failure to provide identification? In light of the factual disputes, the plaintiffs summary judgment motion should be denied.

### B. Officer Cahill and Officer Lynch's Motion for Summary Judgment

The defense of qualified immunity may properly be decided in the context of a summary judgment motion. *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (Noting the policy goal to resolve issues of qualified immunity at earlier stages because qualified immunity is " 'immunity from suit rather than a mere defense to liability.' " (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))); *Moses v. Mele,* 711 F.3d 213, 216 (1st Cir.2013). While disputes of fact may exist, "[w]hat counts is whether the undisputed facts, together with the nonmoving party's version of any disputed facts, suffices to remove the shield of qualified immunity." *Moses,* 711 F.3d at 216. All of the disputed material facts shall be assumed in the plaintiff's favor; "[w]hen a court takes such a cautious approach and the record, so viewed, nevertheless supports a grant of qualified immunity, summary judgment is appropriate." *Moses,* 711 F.3d at 216 (citations omitted).

The doctrine of qualified immunity protects public officials " 'from personal liability for actions taken while performing discretionary functions.' " *Barton v. Clancy,* 632 F.3d 9, 21 (1st Cir.2011) (quoting *Lynch v. City of Boston,* 180 F.3d 1, 13 (1st Cir.1999)). The purpose of qualified

immunity is to "give[ ] government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Qualified immunity protects government officials for objectively reasonable decisions, even if those decisions turn out to be incorrect:

> The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition qualified immunity covers 'mere mistakes in judgment, whether the mistake is one of fact or one of law').

*Pearson,* 555 U.S. at 231, 129 S.Ct. 808.

The First Circuit follows a two-step analysis to determine if qualified immunity is available to defendants: " '(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.' " *Barton,* 632 F.3d at 21–22 (quoting *Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009)); *see also Lopera v. Town of Coventry,* 640 F.3d 388, 396 (1st Cir.2011); *Martinez–Rodriguez v. Guevara,* 597 F.3d 414, 419 & n. 2 (1st Cir.2010); *Mosher v. Nelson,* 589 F.3d 488, 492 (1st Cir.2009). In this case,

tainers in Pennsylvania or Rhode Island to support an allegation that local police ac-

cused him of burglary, assault, robbery, and arson. (# 123 at 23).

Prall alleges that he was stopped and arrested without reasonable suspicion or probable cause in violation of his Fourth Amendment rights. The defendant officers have raised the issue of qualified immunity.

Turning to the first prong of the qualified immunity test, "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right" *Barton,* 632 F.3d at 21–22, it is a long settled principle that warrantless arrests must be supported by probable cause. *Bailey v. United States,* —— U.S. ——, 133 S.Ct. 1031, 1037, 185 L.Ed.2d 19 (2013). The question here is whether probable cause was at least arguable. *Prokey v. Watkins,* 942 F.2d 67, 72 (1st Cir.1991); *see also Moses,* 711 F.3d at 216 ("The case at hand exemplifies this point; where, as here, a section 1983 action rests on a claim of false arrest, the qualified immunity standard is satisfied 'so long as the presence of probable cause is at least arguable.' " (quoting *Ricci v. Urso,* 974 F.2d 5, 6–7 (1st Cir. 1992))); *Glik v. Cunniffe,* 655 F.3d 78, 88 (1st Cir.2011). The Court need only worry whether it was arguable that probable cause was satisfied "where reasonably trustworthy facts and circumstances would enable a reasonably prudent person to believe that the arrestee has committed a crime (even if it differs from the one named by police during the arrest or booking)." *Robinson v. Cook,* 706 F.3d 25, 33 (1st Cir.), *cert. denied,* —— U.S. ——, 133 S.Ct. 2831, 186 L.Ed.2d 885 (2013).

█ The facts of this case provide support for arguable probable cause to arrest Prall. Police received an emergency phone call that two black men were kidnapping a white woman at about 4 a.m. in downtown Boston. (# 123 at 14–15; # 131, Exh. A–C) Officers Cahill and Lynch found Prall, a black man, with another black man and a white woman walking within a couple of blocks from the reported location. (# 123 at 14; # 131, Exh. A) The officers approached the group, inquired whether the woman was being kidnapped, and asked for identification. (# 123 at 15; # 131, Exh. A) Officer Cahill recognized the woman as a prostitute. (# 123 at 8; # 131, Exh. A)

The two other individuals with Prall provided identification confirmed by the responding officers in the NOVA system. (# 123 at 15; # 131 at Exh. A) Prall provided the name "Denzil Willington" which was not found after searching NOVA; the plaintiff's companions did not know his name except for nicknames. (# 123 at 15; # 131, Exh. A) In order to ascertain the plaintiff's identity, officers Cahill and Lynch asked additional basic questions about his birthday and schooling. (# 123 at 9; # 131, Exh. A; # 123 at 15) Prall's answers were inconsistent and evasive. (# 131, Exh. A [9])

Assuming that Prall did not have a red cup of alcohol,[10] it is certainly arguable that one person in a group, the constituent members of which matched the group described in the emergency call and were located in the immediate area described,

---

**9.** The plaintiff does not deny that he gave the officers a fake name because he knew that they would find an outstanding warrant for arrest if his true name was known. He also does not deny that he provided the officers with two different dates of birth, both of which were incorrect, and a false social security number. Prall does not deny that he could not tell officers Cahill and Lynch where

he was born in Boston or what schools he attended. Because these material facts stand uncontroverted, they are deemed to be admitted for present purposes. *See* Local Rule 56.1.

**10.** Again, the plaintiff specifically denies this fact.

who failed to provide identification or consistent answers at 4 a.m. after a 9–1–1 call for kidnapping provided the officers with probable cause to believe that criminal activity was ongoing, even if that criminal activity was different than that alleged in the 9–1–1 call or for which he was arrested. *See, e.g., Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, [the officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." (internal citations omitted)); *United States v. Jones,* 432 F.3d 34, 41 (1st Cir.2005) ("If, on the facts known to the arresting officers, there was probable cause to believe [a person] was committing another crime, the arrest was valid."); *Wilson v. City of Boston,* 421 F.3d 45, 55 (1st Cir.2005) ("In short, the ultimate question for determining whether an arrest violates the Fourth Amendment is ... whether there was probable cause to believe that the arrestee had committed or was committing a crime.").

Even if officers Cahill and Lynch did not have probable cause to arrest Prall for public drinking, based on the facts known to them at the time, they arguably had probable cause to arrest the plaintiff for violation of Massachusetts General Laws chapter 268 § 34, which reads:

> Whoever disguises himself with intent to obstruct the due execution of the law, or to intimidate, hinder or interrupt an officer or other person in the lawful performance of his duty, or in the exercise of his rights under the constitution or laws of the commonwealth, whether such intent is effected or not, shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than one year and may if

imprisoned also be bound to good behavior for one year after the expiration of such imprisonment.

Mass. Gen. L. c. 268 § 34.

By providing a false name, date of birth and social security number, Prall could arguably be said to have "disguised" himself with intent to obstruct the execution of the law and to hinder the police officers' investigation into ascertaining his identity so as to avoid arrest on the outstanding warrant. *See Commonwealth v. Bishop,* 71 Mass.App.Ct. 1125, 887 N.E.2d 312 (Table), 2008 WL 2064665, *1 (Mass.App.Ct., May 16, 2008) (The Massachusetts Appeals Court affirmed a conviction for furnishing a false name to the police under Mass. Gen. L. c. 268 § 4 when the defendant identified himself by his brother's name during the booking process after his arrest for other crimes.), *rev. denied,* 452 Mass. 1101, 891 N.E.2d 237 (Mass.2008) (Table); *see also Commonwealth v. Santiago,* 54 Mass.App.Ct. 656, 662–63, 767 N.E.2d 619, 623–24 (Mass.App.Ct.2002) (The Massachusetts Appeals Court noted that testifying victim had "three misdemeanor charges ... then pending in District Court" including "disguise (apparently by giving false name) with intent to obstruct execution of law, G.L. c. 268, § 34."), *rev. denied,* 437 Mass. 1105, 772 N.E.2d 590 (Mass.2002) (Table).

Alternatively, even if the plaintiff's constitutional rights were violated, under the second step of the qualified immunity analysis, the law with respect to Mass. Gen. L. c. 268 § 34 was not clearly established at the time of the Prall's arrest. The Supreme Court has "held that courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all."

*Reichle v. Howards,* —— U.S. ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012).

■ The First Circuit has had occasion to explain that:

> The latter analysis of whether a right was 'clearly established' further divides into two parts: '(1) "the clarity of the law at the time of the alleged civil rights violation," and (2) whether, given the facts of the particular case, "a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights.'" *Barton* [*v. Clancy* ], 632 F.3d [9] at 22 [ (1st Cir.2011) ] (alteration in original) (quoting *Maldonado* [*v. Fontanes* ], 568 F.3d [263] at 269 [ (1st Cir.2009) ] ). An affirmative finding on these inquiries does 'not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate.' *Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). At bottom, 'the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional.' *Maldonado,* 568 F.3d at 269.

*Glik,* 655 F.3d at 81; *Reichle,* 132 S.Ct. at 2093 ("In other words, existing precedent must have placed the statutory or constitutional question beyond debate.") (internal quotation marks and citation omitted).

"[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Raiche v. Pietroski,* 623 F.3d 30, 38 (1st Cir.2010). Here, the issue can best be framed as whether the law was clear that Prall had the right under the Fourth Amendment to provide Officers Cahill and Lynch with false identification information during a lawful *Terry* stop.

As previously noted, Massachusetts General Laws chapter 268 § 34 provides that it is criminal to "disguise" oneself "with intent to obstruct the due execution of the law, or to intimidate, hinder or interrupt an officer or other person in the lawful performance of his duty." In 1984, the Massachusetts Appeals Court concluded that when a defendant gave his brother's name as his own while under arrest, he was not guilty of violating § 34: "A person who gives a false name does not, we conclude, 'disguise[ ] himself' within the ordinary lexical meaning of the term, and such conduct does not fall within the ambit of the statute." *Commonwealth v. Healey,* 17 Mass.App.Ct. 537, 539, 460 N.E.2d 616, 618 (Mass.App.Ct.1984). The Appeals Court seemingly changed course in later cases. *See Bishop,* 71 Mass.App. Ct. 1125, 887 N.E.2d 312 (Table), 2008 WL 2064665, *1 [11] (The Massachusetts Appeals Court affirmed a conviction for furnishing a false name to the police under Mass. Gen. L. c. 268 § 4 when the defendant identified himself by his brother's name during the booking process after his arrest for other crimes.); *see also Santiago,* 54 Mass.App.Ct. at 662–63, 767 N.E.2d at 623–24 (The Massachusetts Appeals Court noted that testifying victim had "three misdemeanor charges . . . then pending in District Court" including "disguise (apparently by giving false name) with intent to obstruct execution of law, G.L. c. 268, § 34."). In view of these differing deci-

---

**11.** Interestingly, the Appeals Court in the *Bishop* case did not cite the opinion in the *Healey* case even though the defendant in the *Bishop* case challenged the sufficiency of the evidence on all the charges upon which he was convicted, including the one charging a violation of Mass. Gen. L. c. 268, § 34. *Bishop, supra,* 71 Mass.App.Ct. 1125, 887 N.E.2d 312 (Table), 2008 WL 2064665, 3.

sions, the state of the law with respect to Mass. Gen. L. c. 268 § 34 at the time of the incident at issue was not clear or settled. In these circumstances, it was objectively reasonable for officers Cahill and Lynch to believe that they had probable cause to arrest Prall for disguising himself "with intent to obstruct the due execution of the law" within the meaning of Mass. Gen. L. c. 268 § 34.

For the reasons discussed, Cahill and Lynch are entitled to qualified immunity and summary judgment should enter in their favor.

### C. City of Boston Motion for Summary Judgment

■ Prall argues that the City's policy is negligent because the City must have foreseen situations of police arresting individuals for failing to identify themselves. (# 122 at 9–11) The negligence, the plaintiff contends, is that the City refused to offer guidance for officers on what constitutes proper identification. (# 135 at 5) Therefore, in Prall's view, the City recklessly violated the constitutional rights of individuals by allowing absolute police discretion to identify and arrest individuals without any comprehensive guidance, indicating the City had a custom to allow police unfettered discretion. (# 122 at 11)

Essentially, the process the plaintiff describes is not some custom or policy by the City of Boston, but rather a standard set by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Prall's chief complaint about the City's alleged policy is that "[u]nknown persons, whom the police may think are suspicious but do not have probable cause to believe has [sic] committed a crime, are entitled to continue to walk the public streets only at the whim of any suspicious law enforcement officer." (# 123 at 12) This language is fairly comparable to "a police officer may in appropriate circum-

stances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. at 22, 88 S.Ct. 1868; *see also United States v. Rabbia*, 699 F.3d 85, 89–90 (1st Cir.2012) ("More specifically, a police officer is permitted to make a brief investigatory stop, commonly known as a *Terry* stop, based on a reasonable suspicion that criminal activity may be afoot."), *cert. denied*, —— U.S. ——, 133 S.Ct. 1608, 185 L.Ed.2d 597 (2013); *United States v. Brake*, 666 F.3d 800, 804 (1st Cir.2011) ("In essence, a *Terry* stop is a brief detention of an individual for questioning based on a police officer's reasonable suspicion that the person is or has been engaged in criminal activity."). Additionally:

> [M]ost circuits have held that an officer does not impermissibly expand the scope of a *Terry* stop by performing a background and warrant check, even where that search is unrelated to the circumstances that initially drew the officer's attention .... refusal to produce a license that would have alleviated the officer's stated concerns reasonably roused a suspicion that his non-cooperation was driven by other considerations, like an outstanding warrant for his arrest or other criminal history, such as a prior arrest for underage drinking.

*Klaucke v. Daly*, 595 F.3d 20, 26 (1st Cir. 2010).

It is beyond cavil that police are allowed to check for identification during a proper investigatory stop. *See, e.g., Illinois v. Caballes*, 543 U.S. 405, 419, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) ("request for identity has an immediate relation to the purpose, rationale, and practical demands of a *Ter-*

*ry* stop"); *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."); *United States v. Chaney,* 647 F.3d 401, 410 (1st Cir.2011) ("Moreover, during the short period for which Chaney was detained, the police officers worked diligently towards the investigative purpose for which he was being held—namely, determining Chaney's identity."); *United States v. Fernandez,* 600 F.3d 56, 61 (1st Cir.2010) (reasoning that inquiry into a car passenger's identity " 'may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder.' " (quoting *Hiibel* )); *Schubert v. City of Springfield,* 589 F.3d 496, 502 (1st Cir. 2009) (detailing that a police officer observing a man walking toward a courthouse with a holstered gun afforded "Officer Stern … reasonable suspicion to stop the unknown armed man in order to ascertain his identity, his authority to possess the gun, and his intentions."). The custom or policy required to sustain a § 1983 claim is absent when Prall faults the City for training officers to comply with *Terry* stop procedures.

As stated *supra, Terry* stops may evolve into probable cause based on the reasoned judgment ·of the responding officers. *United States v. Ruidiaz,* 529 F.3d 25, 29 (1st Cir.) ("[T]he officer 'may shift his focus and increase the scope of his investigation by degrees if his suspicions mount during the course of the detention.' ") (quoting *United States v. Chhien,* 266 F.3d 1, 6 (1st Cir.2001)), *cert. denied,* 555 U.S. 962, 129 S.Ct. 440, 172 L.Ed.2d 318 (2008). Anonymous tips, especially 9–1–1 calls reporting an ongoing emergency such as kidnapping, (*see United States v. Monteiro,*

447 F.3d 39, 49 (1st Cir.2006)), afford an even greater need for law enforcement to conduct investigatory stops to confirm or dispel suspicion. *See, e.g., Ruidiaz,* 529 F.3d at 30–31 (anonymous 9–1–1 emergency calls do not require the caller's reasons for placing the call to provide reasonable suspicion); *Monteiro,* 447 F.3d at 49 (additional rationale of heightened reliability for emergency calls when there is imminent threat to public safety); *United States v. Romain,* 393 F.3d 63, 71 (1st Cir.2004) ("reasonable suspicion for a *Terry* stop may be based on information furnished by others"), *cert. denied,* 545 U.S. 1122, 125 S.Ct. 2924, 162 L.Ed.2d 308 (2005). Prall cannot maintain that inquiry into a suspect's identity is improper, with or without a City custom or policy, when reasonable suspicion is satisfied. The late night 9–1–1 call, which is not challenged by the plaintiff, provides sufficient reasonable suspicion that two black men walking with a white woman a few blocks away from the reported location were engaged in kidnapping. The officers approached the group to confirm or dispel their reasonable suspicion and arguably acquired probable cause of other criminal conduct when they confirmed no kidnapping was in progress. The City's purported policy or custom is entirely consistent with Supreme Court law and therefore does not violate § 1983.

The plaintiff maintains that the City's failure to train law enforcement on what constitutes proper identification represents the City's acquiescence to constitutional violations by affording police unfettered discretion to arrest at whim. (# 135 at 8) Prall suggests that the City needs to train officers on what forms of identification are acceptable such as passports, driver licenses, or welfare cards (# 122 at 14), and when those forms of identification can be considered reliable. (# 135 at 8) However, a similar policy has already been ruled

unconstitutional because the requirements for credible identification are unconstitutionally vague. *Kolender v. Lawson,* 461 U.S. 352, 359, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). As the *Kolender* Court explained:

It is clear that the full discretion accorded to the police to determine whether the suspect has provided a 'credible and reliable' identification necessarily 'entrust[s] lawmaking "to the moment-to-moment judgment of the policeman on his beat.'" *Smith* [*v. Goguen* ], 415 U.S. [566, 575], 94 S.Ct. [1242,] 1248 [ (1974) ] (quoting *Gregory v. City of Chicago,* 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (Black, J., concurring)). Section 647(e) 'furnishes a convenient tool for "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure,'" *Papachristou* [*v. City of Jacksonville* ], [ ] 405 U.S. [156, 170], 92 S.Ct. [839, 847–48, 31 L.Ed.2d 110 (1972) ] (quoting *Thornhill v. Alabama,* 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–742, 84 L.Ed. 1093 (1940)), and 'confers on police a virtually unrestrained power to arrest and charge persons with a violation.' *Lewis v. City of New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring).

*Kolender,* 461 U.S. at 360.

Enacting the policy suggested by Prall pursuant to which he claims the City could remedy his § 1983 injuries would necessarily tread into forbidden constitutional grounds. *See United States v. Brown,* 731 F.2d 1491, 1494 (11th Cir.)("If the Georgia statute were construed to require, not only truthful identification, but proof of truthfulness on demand, it would be unconstitutional") (citing *Kolender* ), *on reh'g,* 743 F.2d 1505 (11th Cir.1984). His suggestion is especially vulnerable because Prall had

no identification indicating that he was "Denzil Willington," nor could Prall have produced credible evidence he was "Denzil Willington" because anything he produced would have been a forgery. His hope of avoiding arrest hinged on successfully deceiving officers Cahill and Lynch with false identification, which Prall contends should be unequivocally believed unless law enforcement can immediately verify the falsity. (# 122 at 2) Succinctly stated, "[a] municipality cannot be liable for the actions of its officials under *Monell* if those actions 'inflicted no constitutional harm.'" *Robinson v. Cook,* 706 F.3d 25, 38 (1st Cir.), *cert. denied,* —— U.S. ——, 133 S.Ct. 2831, 186 L.Ed.2d 885 (2013) (quoting *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

■ In addition to the reasonable suspicion/probable cause and identification issues developed in his papers, in his amended complaint Prall alleged that the City's unconstitutional municipal custom or policy included: using stereotypes to treat blacks and hispanics differently than other racial groups; failing to focus on blacks' and hispanics' constitutional rights to be secured from unreasonable searches and seizures and to be protected from selective enforcement and prosecution; arresting, charging and fingerprinting blacks and hispanics at much higher rates or at disproportionate rates as compared with other racial groups; using deadly, physical, mechanical, or chemical force on blacks and hispanics at much higher rates or at disproportionate rates as compared with other racial groups; forcing citizens to surrender their Fourth Amendment protections on the say so of BPD; turning the cameras installed in Boston Police vehicles or tampering with video cameras installed in BPD to hide evidence of Boston Police conduct; operating under a culture of a blue wall of silence in which Boston police

officers turned a blind eye or deaf ear when a citizen is framed, coerced, beaten, killed, intimidated or mistreated by fellow officers; concealing the existence of a pattern or practice of the Boston Police Department that deprived persons of the rights, privileges of immunities secured and protected by the Constitution. (# 55 incorporating by reference # 1 ¶ 11(a)-(p)) Even assuming that a civil rights violation occurred in this case, the plaintiff has failed to provide any proof to support his allegations that a municipal policy of failure properly to train, supervise and discipline its police force existed.

The City has submitted evidence establishing that it trains its police officers both before and during their employment pursuant to Mass. Gen. L. c. 41 § 96B. (# 131, Exh. H, Exh. M at 7 § 8.3) The City maintains policies and procedures by which adequately to supervise and discipline members of its police forces. (# 131, Exh. M at 6-7, Exh. N, Exh. O, Exh. P) An independent civilian board established by the City reviews the internal disciplinary process of the Boston Police Department. (# 131, Exh. Q)

Prall has submitted no evidence to counter the City's showing of adequate training and supervision of the members of its police force. The plaintiff himself had only been in the Commonwealth for about three months at the time of the incident and had never had any prior interaction with the Boston police. (# 131, Exh. E at 68) No evidence of other similar incidents of police misconduct has been offered apart from general talk on the street about what police do. (# 131, Exh. E at 68-70) Although Prall testified that he had seen other arrests in the downtown area of Boston "when they were shaking random people down, [and] putting individuals against the wall," he admittedly did not know what led

the Boston police to approach these individuals or if a crime had been committed. (# 131, Exh. E at 71-72) While claiming to know people who had been stopped by the Boston police, apart from one individual, Prall did not know their names. (# 131, Exh. E at 69-70) The one individual he could identify allegedly had contact with the Boston police four or five years earlier, although she apparently did not tell the plaintiff "exactly when" the police locked her up because she did not have identification. (# 131, Exh. E at 69-70) On the one hand Prall testified that the Boston police would "stop an individual, a black individual, before they stop any white individuals." (# 131, Exh. E at 73) However, when asked if he felt that "the Boston police were approaching people of color more than white people," the plaintiff responded "[n]ot more. Not more than black. They did approach white people." (# 131, Exh. E at 74)

The bottom line is that Prall has offered insufficient evidence to raise a genuine issue of material fact with regard to the City's training, supervision and discipline of the members of the Boston Police. In the absence of any evidence establishing an unconstitutional custom or policy, the City is entitled to the entry of summary judgment in its favor.

## V. Recommendations

For all of the reasons stated, I RECOMMEND that the Motion For Summary Judgment (# 121) be DENIED. I FURTHER RECOMMEND that Defendant Officer Jeffrey Lynch and Defendant Officer Jeffrey Cahill's Motion for Summary Judgment (# 127), and Defendant, City of Boston's Motion for Summary Judgment (# 128) be ALLOWED. I FURTHER RECOMMEND that Final Judgment enter for defendant City of Boston on Count

I, enter for defendants Lynch and Cahill on Count II and enter dismissing claims against John Does 1–99 a/k/a Unknown Named Boston Police Officers and John Moe a/k/a Magistrate Judge.

## VI. *Review by the District Judge*

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

August 29, 2013.